[Cite as *State v. Parsons*, 2025-Ohio-4626.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

CULLEN PARSONS,

    DEFENDANT-APPELLANT.

CASE NO. 7-25-01

OPINION AND
JUDGMENT ENTRY

Appeal from Henry County Common Pleas Court
Trial Court No. 15CR082

Judgment Affirmed

Date of Decision:  October 6, 2025

APPEARANCES:

    *Michael H. Stahl* and *Michael G. Aird* for Appellant

    *Gwen Howe-Gebers* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Cullen Parsons ("Parsons"), appeals the January 7, 2025 judgment entry of the Henry County Court of Common Pleas, which partially denied his motion for leave for a new trial. We affirm.

{¶2} On March 9, 2016, Parsons was convicted of attempted murder with a firearm specification, felonious assault with a firearm specification, and improperly handling firearms in a motor vehicle and sentenced to a cumulative term of 12 years in prison. Parsons directly appealed the trial court's judgment entry of sentence.[1] In his direct appeal, we affirmed the judgment of the trial court, but vacated Parsons's sentence and remanded the case for proper sentencing after concluding that the trial court erred by sentencing Parsons to a term of imprisonment as to each of the three offenses after the trial court determined that the offenses were allied offenses of similar import. The trial court properly resentenced Parsons on August 22, 2018.

{¶3} Following his direct appeal, Parsons filed several post-conviction motions, including motions for leave to file motions for a new trial and petitions for

---

[1] In Parsons's direct appeal from his convictions and sentence, this court recited much of the factual and procedural background of this case, and we will not duplicate those efforts here. *See State v. Parsons*, 2017-Ohio-1315, (3d Dist.).

post-conviction relief. These motions were denied by the trial court and affirmed by this court.

{¶4} On March 20, 2023, Parsons filed a motion for leave to file a motion for a new trial. This motion was based on newly discovered evidence related to jailhouse informant Rolando Valle ("Valle"). According to Parsons, Valle's testimony at trial, which linked Parsons to the shooting, was a fabrication intended to help Valle get a more favorable deal in his own criminal case. Relevantly, the evidence that Parsons directed the trial court to includes Valle's cell-assignment records from the Corrections Center of Northwest Ohio ("CCNO"), which allegedly show that he and Parsons were *not* in the same unit when Valle claims to have engaged in a conversation with Parsons about the crime. The other new evidence consists of a transcript and an audio recording of a September 17, 2015 interview between Valle, the Multi-Area Narcotics ("MAN") unit, and the Defiance County Prosecutor, as well as a September 18, 2015 MAN unit report detailing this interview.

{¶5} Following a hearing on July 20, 2023, the trial court denied Parsons's motion for leave to file a motion for a new trial after concluding that Parsons was not unavoidably prevented from discovering the cell-assignment records because the State had no obligation to provide them under the criminal rules, and Parsons

should have sought them via subpoena. The trial court also concluded that, even if the evidence was suppressed, it would not have changed the outcome of his trial.

{¶6} On September 3, 2024, this court reversed the decision of the trial court after determining that the trial court applied the wrong legal standard. The case was remanded to the trial court to reconsider the motion under the correct legal standard.

{¶7} Following remand of the case to the trial court, the trial court partially granted Parsons's motion for leave to file a motion for a new trial on January 7, 2025 but only as to the MAN unit audio recording, transcript, and report. The trial court determined that Parsons was unavoidably prevented from discovering this evidence since the State itself was unaware of its existence. However, the trial court denied Parsons's motion as it related to Valle's CCNO cell-assignment records, maintaining that these records "were known to have existed and are not required to be provided under Crim. R. 16." (Doc. No. 132).

{¶8} Thereafter, on January 15, 2025, Parsons filed a motion for a new trial based on this new evidence. The State filed a memorandum in opposition to Parsons's motion for a new trial on January 27, 2025. Parsons filed his reply on February 3, 2025. However, the trial court stayed consideration of Parsons's motion for a new trial pending the outcome of this appeal.

{¶9} On February 6, 2025, Parsons filed his notice of appeal from the trial court's January 7, 2025 entry. He raises one assignment of error for our review.

**Assignment of Error**

**The trial court erred when it found that Mr. Parsons was not unavoidably prevented from discovering the cell-assignment records of jailhouse informant Rolando Valle.**

{¶10} In his assignment of error, Parsons argues that the trial court erred by partially denying his motion for leave to file a motion for a new trial because he contends that he was unavoidably prevented from discovering the CCNO cell-assignment records for Valle. Specifically, Parsons contends that he was unavoidably prevented from discovering this evidence because the State improperly withheld the cell-assignment records in violation of *Brady v. Maryland*. 373 U.S. 83 (1963).

*Standard of Review*

{¶11} A trial court's decision granting or denying a motion for leave to file a delayed motion for new trial is reviewed for an abuse of discretion. *State v. Anderson*, 2012-Ohio-4733, ¶ 9 (10th Dist.). An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

{¶12} Motions for a new trial are governed by Crim.R. 33(A), which provides, in relevant part, that a trial court may grant a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with

reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6).

Crim.R. 33(B) sets forth the timing requirements for new-trial motions and

provides, in its relevant part:

> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶13} "Accordingly, a party may not seek a new trial on the basis of newly

discovered evidence after the 120-day time limit unless he can demonstrate that he

was unavoidably prevented from discovering the new evidence within the time

limit." *State v. Keith*, 2011-Ohio-407, ¶ 39 (3d Dist.), citing Crim.R. 33(B). "'A

party is "unavoidably prevented" from filing a motion for a new trial if the party

had no knowledge of the existence of the ground supporting the motion and could

not have learned of that existence within the time prescribed for filing the motion in

the exercise of reasonable diligence.'" *Id.*, quoting *State v. Lee*, 2005-Ohio-6374, ¶

8 (10th Dist.). "The 'unavoidably prevented' requirement can also be met by

establishing that the state suppressed the evidence he is relying on to seek a new

trial." *State v. Coley*, 2023-Ohio-4453, ¶ 15 (6th Dist.). In other words, for a motion

for a new trial based on newly discovered evidence, a defendant may make the

required showing that he or she was unavoidably prevented from timely filing by either establishing that the prosecution suppressed the evidence (a *Brady* violation) *or* by demonstrating they were unaware of the evidence and could not have discovered it through the exercise of reasonable diligence. *State v. Johnson*, 2024-Ohio-134, ¶ 18.

{¶14} "In order to be able to file a motion for a new trial based on newly discovered evidence beyond the 120 days prescribed in the above rule, a petitioner must first file a motion for leave, showing by 'clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion.'" *Keith* at ¶ 40, quoting *State v. Graham*, 2006-Ohio-352, ¶ 10 (3d Dist.).

{¶15} Since Parsons was convicted in 2016, he filed a motion for leave arguing that he was unavoidably prevented from timely filing his motion for a new trial. As clear and convincing proof that he was unavoidably prevented from timely filing his motion, Parsons argued that the State suppressed key evidence in violation of *Brady*. This suppressed evidence, which Parsons contends that he discovered later, included Valle's cell-assignment records from CCNO, a transcript and audio recording of a MAN unit interview with Valle, and a MAN unit report detailing that interview. Parsons argued that this evidence was material and favorable to his defense, and because the State withheld it, he could not have discovered it within the prescribed time.

{¶16} In its January 7, 2025 judgment entry, the trial court granted Parsons's motion for leave to file a new trial as to the MAN unit interview and report, but not as to Valle's cell-assignment records. The trial court reasoned that, while the MAN unit interview and report were undiscovered by the prosecution and therefore Parsons was "unavoidably prevented" from obtaining them, the cell-assignment records were "known to have existed" and were not required to be provided under Crim.R. 16. (Doc. No. 132). Specifically, the trial court concluded that Parsons had every opportunity to discover Valle's cell-assignment records himself through reasonable diligence and a subpoena.

{¶17} On appeal, Parsons argues the trial court abused its discretion by denying him access to Valle's cell-assignment records because these records were withheld by the State and were materially exculpatory. Parsons contends that, because the evidence was suppressed by the State, he was unavoidably prevented from discovering it and therefore should be granted leave to file a motion for a new trial based on a *Brady* violation, regardless of whether he exercised reasonable diligence in trying to find the evidence sooner.

{¶18} "Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 565 U.S. 73, 75 (2012). The *Brady* rule applies not only to evidence known directly to the prosecutor, but also to evidence known

only to police investigators and imposes on the prosecutor a "'duty to learn of any favorable evidence known to the others acting on the government's behalf in [the] case.'" *Strickler v. Greene*, 527 U.S. 263, 280-281 (1999), quoting *Kyles v. Whitley*, 514 U.S. 419, 437-438 (1995). "The duty to disclose such evidence was later extended to 'encompass[] impeachment evidence as well as exculpatory evidence' and to apply even when 'there has been no request by the accused.'" *State v. Bingham*, 2024-Ohio-2861, ¶ 23 (3d Dist.), quoting *Strickler* at 280.

**{¶19}** "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler* at 281-282. "Favorable evidence is 'material' if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense." *Bingham* at ¶ 25.

**{¶20}** "[T]he defendant 'bears the burden of proving a *Brady* violation and consequent denial of due process.'" *State v. Dodson*, 2023-Ohio-701, ¶ 30 (10th Dist.), quoting *State v. Moore*, 2013-Ohio-3365, ¶ 43 (10th Dist.). Importantly, '[a] *Brady* violation may not rest upon a claim that is "purely speculative."'" *Id.*, quoting *Moore* at ¶ 43, quoting *State v. Hanna*, 95 Ohio St.3d 285, 296 (2002). "'"The *mere possibility* that an item of undisclosed information might have helped

the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.""" (Emphasis in original.) *Id.*, quoting *State v. Lawson*, 64 Ohio St.3d 336, 343 (1992), quoting *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).

{¶21} "However, the defendant is not required to show that disclosure of the evidence would have resulted in his acquittal or that, after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been sufficient evidence left to convict." *Bingham* at ¶ 25. "Instead, the defendant must prove that, in the context of the entire record, suppression of the undisclosed evidence undermines confidence in the outcome of the proceeding." *Id.*, citing *State v. Bethel*, 2022-Ohio-783, ¶ 32, 34 (noting that suppressed evidence must be considered collectively, not item by item, and materiality of suppressed evidence must be viewed in the context of the entire record).

{¶22} In this case, we conclude that Parsons did not demonstrate that the State's failure to provide Valle's CCNO cell-assignment records constituted a *Brady* violation. Primarily, Parsons did not demonstrate that the State improperly withheld Valle's cell-assignment records because the information was readily available or accessible to him through other means.

{¶23} Decisively, "[i]f the defendant knows of essential facts that allow him to take advantage of the information, or has access to the information through

another source, the state's failure to disclose does not amount to a constitutional violation under *Brady*." *State v. Jury*, 2022-Ohio-4419, ¶ 20 (6th Dist.), citing *State v. Ketterer*, 2010-Ohio-3831, ¶ 36. The State cannot suppress evidentiary materials under *Brady* when the subject information is publicly available or not under the State's control. *State v. Duncan*, 2024-Ohio-5610, ¶ 43 (10th Dist.). In sum, "[t]here is no need to require the state to 'disclose' material that is readily available to the defense." *State v. McGuire*, 2018-Ohio-1390, ¶ 24 (8th Dist.).

**{¶24}** Here, even though Parsons contends that the records were in the State's possession and would have shown that Valle and Parsons were not housed together at the time of the alleged conversation, this information was not withheld in violation of *Brady*. Indeed, Parsons would have known the essential facts to pursue the information. Specifically, Parsons knew that Valle would be testifying at trial, and he knew whether he had been housed with Valle and whether the alleged conversation had occurred, giving him sufficient information to investigate and subpoena the records himself. *See Jury* at ¶ 15 (concluding that there was no *Brady* violation where the defendant could have subpoenaed the evidence himself); *State v. Hughes*, 1993 WL 453699, *8 (8th Dist. Nov. 4, 1993) ("*Brady* does not require the government to disclose evidence available to the defense from other sources.").

**{¶25}** Moreover, even assuming without deciding that Valle's cell-assignment records should have been disclosed, Parsons did not demonstrate that

-11-

those records were material. *See Bingham*, 2024-Ohio-2861, at ¶ 26 (3d Dist.). Importantly, Valle's credibility was impeached at trial when he testified both that he heard Parsons confess in a group setting and that he had read about the shooting in the newspaper. Valle's impeachment was further supported by the fact that the trier of fact was made aware that he was cooperating in hopes of receiving a favorable outcome in his own criminal case. The trier of fact was therefore cognizant that Valle's testimony could have been influenced by outside information and that his credibility was open to question.

{¶26} Moreover, while finding Parsons guilty, the trial court reviewed the evidence it considered important, stating that "some of the critical pieces of evidence" were the timeline of events, the DNA on the handgun's trigger and handle, Parsons being seen outside, and the place in which law enforcement located the gun used in the shooting. (Mar. 9, 2016 Tr. at 2-3). Importantly, absent from this analysis of critical evidence is Valle's testimony. Thus, it is evident that the trial court did not primarily rely on his testimony to find Parsons guilty.

{¶27} Consequently, the additional impeachment value of the cell-assignment records does not create a reasonable probability of a different outcome in this case. Therefore, given Valle's already impeached credibility, along with the balance of the State's evidence presented at trial, the omission of the cell-assignment records does not undermine confidence in Parsons's conviction.

**{¶28}** Accordingly, we conclude that Parsons did not carry his burden of proving a *Brady* violation. *See State v. Hill*, 2023-Ohio-1954, ¶ 35 (10th Dist.). Thus, Parsons was not unavoidably prevented from discovering Valle's cell-assignment records. Therefore, the trial court did not abuse its discretion by partially denying Parsons's motion for leave to file a motion for new trial based on Valle's cell-assignment records. *See Jury*, 2022-Ohio-4419, at ¶ 47 (6th Dist.).

**{¶29}** Parsons's assignment of error is overruled.

**{¶30}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

**/hls**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

William R. Zimmerman, Judge

Juergen A. Waldick, Judge

John R. Willamowski, Judge

DATED:
/hls